UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHON GRIMES,

      Plaintiff,

v.                             CASE No. 8:13-CV-661-T-TGW

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.

_____

## O R D E R

      The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

## I.

      The plaintiff, who was forty-eight years old at the time of the second administrative hearing and who has a high school education, has worked as a construction laborer, furniture mover, and a roofing helper and

_____

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

cleaner (Tr. 30, 34, 60, 307). The plaintiff filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to AIDS, back pain, ankle injury, high blood pressure, and cholesterol (Tr. 242). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. At the beginning of the hearing, the following exchange occurred between plaintiff's counsel and the law judge (Tr. 56-57):

> Attorney: Judge, I submitted a letter to your honor asking for a consult and I'd like to address our theory. ...[H]e has been suffering ongoing pain problems and the pain questionnaires ... that he's submitted I think show ... ongoing complaints of [a] pretty nasty pain situation. ...[W]e have asked for a consultative evaluation to address his pain ....
>
> Law Judge: [W]hat kind of consulting exam do you want?
>
> Attorney: Physical exam to address ... whatever limitations may be imposed by his pain.

The law judge heard testimony from the plaintiff to ascertain what type of consultative examination was appropriate (see Tr. 57). The

-2-

plaintiff stated, repeatedly, that he could not work "[b]ecause of my ankle and my back" (Tr. 65; see also Tr. 66, 67, 69).  Consequently, the law judge ordered a consultative examination by an orthopedic physician.

The law judge held a second hearing, six months later, after receiving a report from consultative examiner Dr. Arthur J. Pasach, a physical medicine and rehabilitation physician (Tr. 27, 423-25).  Plaintiff's counsel acknowledged Dr. Pasach's opinion that the plaintiff could perform light exertional work (Tr. 28).  However, seizing on Dr. Pasach's extraneous comment that he "suspect[s] mental retardation," plaintiff's counsel argued that the law judge should hold the proceedings in further abeyance and order a consultative psychological evaluation to determine whether the plaintiff met listing 12.05 for mental retardation (id.; see also Tr. 314).[2]

The law judge had the plaintiff testify again about the nature of his alleged disability.  The plaintiff reiterated that he was unable to work due to physical ailments; specifically, the plaintiff testified that he was disabled

---

[2]On August 1, 2013, the Social Security Administration amended listing 12.05 by replacing the words "mental retardation" with "intellectual disability." Hickel v. Commissioner of Social Security, 539 Fed. Appx. 980, 982 n. 2 (11th Cir. 2013), citing 78 Fed. Reg. 46,499, 46,501.  This nominal change does not affect the definition of the disorder.  For consistency with the parties' briefs, the disorder is referred to as mental retardation in this Order.

due to "pain in my back ... and my foot" (Tr. 35). The plaintiff also stated he had not worked because jobs were scarce (id.).[3]

The plaintiff testified further that he received a regular high school diploma, but was in special education classes (Tr. 30, 40). Plaintiff's counsel also elicited testimony that the plaintiff was having difficulty in his college vocational classes to become a heating, ventilation and air conditioning technician (Tr. 36-38).

Plaintiff's counsel was notified that the request for an I.Q. test would be denied (Tr. 318). Accordingly, the law judge issued his decision without ordering a second consultative examination. The law judge found that the plaintiff had severe impairments of "Human Immunodeficiency Virus and history of left ankle fracture, status-post open reduction, internal fixation and later hardware removal, degenerative disc disease of the lumbar spine, status-post surgery" (Tr. 12). As a result of these impairments, the law judge found further (Tr. 13):

---

[3] The plaintiff testified that he received unemployment benefits for part of this alleged disability period and, in this connection, had represented to the state agency that he was able to work and did look for work (Tr. 31, 33, 35, 38, 208). This was not the first time the plaintiff made inconsistent representations for financial gain, as he was previously found guilty of welfare fraud for which he spent ten months in prison (Tr. 31).

> [T]he claimant has the residual functional capacity
> to perform a limited range of light work as defined
> in 20 CFR 404.1567(b) and 416.967(b).   The
> claimant can lift 10 pounds frequently and 20
> pounds occasionally.   In an eight-hour day he can
> sit six hours and stand and/or walk two hours.   He
> needs a sit stand option.   He is able to sit for one
> hour at a time, stand 30 minutes at a time, and walk
> 30 minutes at a time.   He can perform occasional
> postural activities (climbing, balancing, stooping,
> kneeling, crouching, and crawling), but never
> climb ladders or crawl.   He must avoid unprotected
> heights.   He is limited to simple instructions and
> tasks.

The law judge concluded that these limitations prevented the plaintiff from performing past work (Tr. 16).   However, based upon the testimony of a vocational expert, the law judge determined that jobs exist in significant numbers in the national economy that the plaintiff could perform, such as packager, assembler, and general machine operator (Tr. 17, 18).   Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 18).   The Appeals Council let the decision of the law judge stand as the final decision of the defendant.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). In this case, the plaintiff must show that he became disabled before his insured status expired on March 31, 2011, in order to receive disability benefits (Tr. 210). 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305

-6-

U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper

legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff reported to the Social Security Administration, and testified before the law judge, that he could not work due to pain in his back, ankle, and foot. As indicated, the law judge did not find that those physical ailments were debilitating, but rather that they limited the plaintiff to a restricted range of light work (Tr. 12, 13).

On appeal, the plaintiff does not challenge the law judge's determination of his physical residual functional capacity, but rather argues that the law judge failed to evaluate whether he has the impairment of mental retardation (Doc. 15, pp. 4-8). Specifically, the plaintiff argues that the law judge failed to order a consultative psychological examination to determine whether he met listing 12.05 for mental retardation, and that the law judge did not analyze the plaintiff's alleged mental retardation and its effects on his ability to work (<u>id.</u>, pp. 6-8). The plaintiff's arguments are unmeritorious.

A. The plaintiff argues first that the law judge's failure to order a psychological evaluation with an I.Q. test violated his duty to develop the

-8-

record (id., pp. 4-6). A law judge has a basic obligation to develop a full and fair record. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11ᵗʰ Cir. 2003). This duty requires the development of the plaintiff's medical history for the twelve months preceding the filing of the application for benefits. Id. Nonetheless, the plaintiff bears the burden of proving that he is disabled and, thus, is responsible for producing evidence to support his claim. Id.

The plaintiff does not allege that the law judge failed to develop the record for the twelve months prior to his application for benefits. Instead, the plaintiff argues that the law judge should have granted his request, made more than one and one-half years after filing his application for benefits, for a psychological evaluation with an I.Q. test to determine whether the plaintiff met listing 12.05 for mental retardation (Tr. 28, 314). See 20 C.F.R. Part 404, Subpt. P, Appx. 1. Plaintiff's counsel based this request upon Dr. Pasach's unexplained and gratuitous comment that he "suspect[s] mental retardation" (Tr. 28, 314).

In this regard, the plaintiff relies upon 20 C.F.R. 404.1529(b), 416.929(b), which provide:

> We will develop evidence regarding the possibility of a medically determinable mental impairment

>when we have information to suggest that such an
impairment exists, and you allege pain or other
symptoms but the medical signs and laboratory
findings do not substantiate any physical
impairment(s) capable of producing the pain or
other symptoms.

However, a law judge is not required to order a consultative examination if

the record contains sufficient evidence for the law judge to make an informed

decision. Ingram v. Commissioner of Social Security Administration, 496

F.3d 1253, 1269 (11th Cir. 2007). The law judge did not err in declining to

order a consultative psychological evaluation in this case because the record

contained sufficient evidence for the law judge to make an informed decision

that the plaintiff did not meet listing 12.05 for mental retardation.

Notably, a condition in Appendix 1 is considered so severe that

a plaintiff who meets, or equals, a listing is deemed disabled without regard

to vocational considerations. Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d

660, 662 (11th Cir. 1987). Thus, the issue of whether the plaintiff meets, or

equals, a listing comes at the third step in the sequential analysis before the

issues of whether the plaintiff can return to prior work (step four), or perform

other jobs in the national economy (step five). See 20 C.F.R. 404.1520,

416.920. The plaintiff bears the burden of showing that he meets, or equals,

a listing.  See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

Listing 12.05 provides (20 C.F.R. Part 404, Subpt. P, Appx. 1):

> 12.05 *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

OR

D. A valid verbal, performance, or full scale IQ score of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence or pace; or

4. Repeated episodes of decompensation, each of extended duration.

In short, "[t]o be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (emphasis added).

The plaintiff does not even identify which provision of listing 12.05 may be applicable to him.   That failure, alone, is a sufficient basis to reject his argument because the Scheduling Order and Memorandum Requirements cautioned the plaintiff that he forfeits any argument for which he does not "identify with particularity the discrete grounds upon which the

administrative decision is being challenged" and properly "support[] [the contention] by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 13). Nonetheless, the record contained ample evidence from which the law judge could determine that the plaintiff did not meet any provision of listing 12.05.

Thus, the record contains no diagnostic findings, school records, prison records, or other objective evidence indicating that the plaintiff suffers from mental retardation. See McSwain v. Bowen, supra; Ellison v. Barnhart, supra (the plaintiff bears the ultimate burden of proving disability, and is responsible for identifying medical and other evidence regarding his impairments). Significantly, there is a record of February 1, 2011, from the Hillsborough County Health Department Specialty Care Center documenting a mental health screening (Tr. 404). That report concluded that the plaintiff was negative for depression, anxiety, and suicidal ideation (id.). There was not even a mention of mental retardation.

Further, the plaintiff did not present any evidence that he was unable to work due to a mental impairment. To the contrary, the plaintiff testified, repeatedly, that it was his physical ailments that allegedly precluded

him from working (see, e.g., Tr. 35, 56, 65-68, 242, 283, 301). In particular,

when the law judge asked the plaintiff why he stopped doing his prior

warehouse and construction work, the plaintiff answered, "[b]ecause of my

pain in my back ... and my foot, and ... the jobs were scarce back then..." (Tr.

35, 64-65). Additionally, when the law judge pointedly asked the plaintiff if

he could perform a "simple job," the plaintiff responded that his physical

ailments precluded such work (Tr. 67).

Notably, the law judge considered that a different law judge had

issued an unfavorable decision on a prior disability claim just two weeks prior

to the current application. There is no indication in that decision that the

plaintiff even raised an allegation of a mental impairment (Tr. 83-84).

Consequently, the fact that a cognitive impairment was not raised previously

undercuts the merit of this belated contention, as indications of listing-level

severity mental retardation would have been present many years earlier. In

fact, in order to meet, or equal, listing 12.05, evidence must demonstrate the

onset of the condition before age 22.

In addition, the law judge considered that the plaintiff's prior

unskilled work was persuasive evidence that the plaintiff was not mentally

disabled (Tr. 50, 307).  In this regard, the following exchange took place

between the law judge and the vocational expert (Tr. 50):

> Law Judge: Now, he did his past work with his I.Q.
> Whatever his I.Q. is, he did his past work with it.
>
> Vocational Expert: That's correct, sir.  That is
> correct.
>
> Law Judge: Assuming that he's able to do those
> jobs with his I.Q.,would someone with the same
> level of intellectual functioning be able to do the
> jobs that you have given me?
>
> Vocational Expert: I believe so, your honor.

Furthermore, the vocational expert elaborated that, for "I.Q. levels that ...

border on mental retardation, or ... show mental retardation ... those

[unskilled] jobs may not be consistent with" such mental abilities (id.).  In

other words, based upon this testimony, the law judge could reasonably

conclude that, if the plaintiff had an I.Q. score that would meet, or equal, the

score required by listing 12.05, he would not have been able to perform the

unskilled work that he had previously done.

      In addition to the absence of any significant work-related mental

limitation, the record shows that the plaintiff graduated high school with a

regular diploma, had a driver's license, and was fully independent for all of

his personal care (Tr. 15, 30, 40, 60, 268, 289, 424).   Further, the plaintiff reported that he prepares his own meals, can do household cleaning and laundry, and occasionally shops (Tr. 15, 268, 289).   There was also evidence that the plaintiff can read and communicate in writing, and that, although he was failing some courses, he obtained a grade of B in a college vocational class (Tr. 36, 241; see, e.g., Tr. 292-94).   In addition, the plaintiff's conviction for welfare fraud contradicts the claim of mental retardation (Tr. 31).   These circumstances are inconsistent with mental limitations of the severity required to meet listing 12.05 because they negate the required showing of "deficits in adoptive functioning."  See 20 C.F.R. Part 404, Subpt. P, Appx. 1.  In sum, there was substantial evidence in the record from which the law judge could reasonably conclude, without a consultative psychological evaluation that included an I.Q. test, that the plaintiff did not meet listing 12.05.

Plaintiff's counsel's belated request to the law judge for a consultative psychological evaluation was premised upon Dr. Pasach's inexplicable comment that he "suspect[s] mental retardation" (Tr. 28, 314). This comment did not compel the law judge to order a consultative

psychological evaluation because the law judge did not give Dr. Pasach's speculation any credence, as it was inconsistent with the record (see Tr. 28).

Dr. Pasach, a physical medicine and rehabilitation physician, was retained to perform an orthopedic evaluation (Tr. 422). Following the examination, Dr. Pasach issued a report which listed physical diagnoses and the speculation that, "I suspect mental retardation" (Tr. 423-25). Plaintiff's counsel seized on this comment, apparently as a final effort to save the plaintiff's claim because Dr. Pasach's report did not support the plaintiff's contention that his physical impairments were disabling.

The law judge acknowledged in his decision Dr. Pasach's opinion of the plaintiff's physical functioning and the comment that Dr. Pasach suspected mental retardation (Tr. 15). The law judge gave Dr. Pasach's opinion significant weight to the extent it was consistent with the law judge's determination of the plaintiff's residual functional capacity (id.). The law judge added, however, that "the evidence, including the consultative examiner's own report, does not support the claimant is limited to the extent described" (id.). Particularly with regard to the plaintiff's mental capacity, the law judge explained that the plaintiff could perform unskilled work "in

light of his unskilled work history" (id.). Thus, contrary to the plaintiff's contention, the law judge did consider, and articulate an adequate reason for not giving credence to, Dr. Pasach's suspicion of mental retardation. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (a physician's opinion may be rejected when it is not supported by the evidence).

Significantly, Dr. Pasach, who was a one-time consulting physician, did not articulate the basis for his "susp[icion] of mental retardation," or otherwise explain what he meant by this statement. See 20 C.F.R. 404.1508, 416.908 (the impairment "must be established by medical evidence consisting of signs, symptoms and laboratory findings, not only by your statement of symptoms").[4] As a rehabilitation physician, it is unknown whether Dr. Pasach knows the technical definition of mental retardation, and, in particular, whether he was aware of the Social Security Administration's criteria for the disorder. Consequently, there is no reason to think that Dr. Pasach was suggesting that the plaintiff had a mental deficit within the limits of listing 12.05.

---

[4]With regard to the plaintiff's mental functioning, Dr. Pasach merely mentioned the plaintiff's statements that he was in special education classes and that he is able to read, but not write (the latter of which is contradicted by other parts of the record) (Tr. 424).

To the contrary, after Dr. Pasach noted his suspicion of mental retardation, he opined that, although he did not "believe that [the plaintiff] is able to be employed at heavy labor ... he could manage light duty" (Tr. 425). Moreover, he indicated that the plaintiff could perform activities like shopping, traveling without a companion, and using public transportation (Tr. 434). Therefore, whatever mental deficit Dr. Pasach suspected that the plaintiff had, Dr. Pasach obviously did not believe it was of the severity to prevent the plaintiff from working.

In sum, Dr. Pasach's vague "susp[icion]" of mental retardation did not obligate the law judge to order a psychological evaluation. See Sneed v. Barnhart, 214 Fed. Appx. 883, 886 (11th Cir. 2006) (sporadic references to depression did not obligate the law judge to obtain a psychological consultative report).

The plaintiff argues further in his memorandum that a psychological examination was necessary to evaluate his "possible mental impairments" based on the plaintiff's history of special education, difficulty with college vocational coursework, and "the fact the Plaintiff could read but

not write" (Doc. 15, p. 5).  However, the plaintiff's belated contention is unpersuasive.

First, although the plaintiff stated that he was in special education classes and obtained his diploma at age 21, the plaintiff also testified that he earned a regular high school diploma (Tr. 30) and reported attending high school for the typical four-year period (Tr. 243).  Therefore, the law judge could have found that the plaintiff's educational history did not suggest mental retardation.  Moreover, if there was evidence of mental retardation in the plaintiff's school records, it was his burden to produce it. Ellison v. Barnhart, supra, 355 F.3d at 1276.

Additionally, the plaintiff's difficulty in college courses to become a heating, ventilation and air conditioning technician does not indicate the plaintiff has the impairment of mental retardation.  Thus, a heating and air conditioning installer-servicer is a SVP level 7 on a scale of 1 to 10, see Dictionary of Occupational Titles, DICOT 637.261-014, 1991 WL 685487 (G.P.O.), and the plaintiff presents no argument that difficulty training for a skilled vocation shows that an individual is mentally retarded.

In fact, the plaintiff did earn seven credits and received a grade of B in his college construction class (Tr. 36).

Moreover, contrary to the plaintiff's contention, it is not a fact that the plaintiff could not write, as the record contains evidence to the contrary (Tr. 37). Specifically, the plaintiff testified that he can write, but spells words incorrectly (id.).[5] In sum, none of those circumstances shows that the law judge violated a duty to develop the record by failing to obtain a consultative psychological evaluation.

Finally, in order to justify a remand on the basis of a due process violation, the plaintiff must demonstrate that he was prejudiced by the law judge's purported failure to develop the record. Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997); see, e.g., Smith v. Commissioner of Social Security, 501 Fed. Appx. 875, 878-79 (11th Cir. 2012) (law judge's failure to order a consultative psychological evaluation was not error because the record does not reveal an evidentiary gap that prejudiced the plaintiff). The plaintiff does not mention this prong of the analysis in his argument (Doc. 15,

---

[5]Furthermore, handwritten reports to the Social Security Administration ostensibly written by the plaintiff indicate that the plaintiff can write adequately (see, e.g., Tr. 291-92).

pp. 5-6) and, therefore, he certainly has not demonstrated an evidentiary gap that prejudiced him.

Significantly, the law judge limited the plaintiff's mental residual functional capacity to simple instructions and tasks (Tr. 43). Additionally, the law judge confirmed with the vocational expert that the representative jobs he identified were unskilled (see Tr. 48-50). The plaintiff has not asserted any argument that he is more limited than the residual functional capacity determined by the law judge. To the contrary, the record affirmatively shows, based on the plaintiff's work history, that he is mentally capable of performing unskilled work (id.). Therefore, the plaintiff has failed to show that he was prejudiced by any purported failure by the law judge to order a consultative psychological evaluation.

If anything, the plaintiff's contention that he was entitled to a consultative psychological evaluation could justifiably be denied because it was unreasonably untimely. Thus, the plaintiff failed to allege a mental impairment in his reports to the Social Security Administration, or testify that a mental impairment affected his ability to work. Furthermore, plaintiff's counsel stated at the first hearing that that the sole basis for the plaintiff's

disability claim was pain from physical impairments, and he requested only a consultative physical examination after the law judge asked him what type of consultative examination he wanted (Tr. 56, 57, 165).   Moreover, plaintiff's counsel has represented the plaintiff for years in two applications for benefits, but did not previously raise an allegation of mental disability. Therefore, under these circumstances, the plaintiff's request to delay this proceeding for a third time to obtain a psychological evaluation is unwarranted.

B. The plaintiff's second argument is that the law judge failed to analyze his mental retardation, and consider it in combination with his physical impairments (Doc. 15, pp. 6-7). The plaintiff's argument is flawed because it presupposes that the plaintiff has the impairment of mental retardation. However, the law judge did not make such a finding. Further, the plaintiff does not identify in this argument any purported evidence of mental retardation to show that the law judge erred in this respect (see id., pp. 6-8). That failure justifies forfeiture of this argument under the terms of the Scheduling Order and Memorandum Requirements (Doc. 13). Nonetheless,

assuming that the plaintiff is relying upon the evidence from his first argument, the contention is unpersuasive.

In particular, the plaintiff argues that the law judge erred because he did not complete a Psychiatric Review Technique Form ("PRTF") (Doc. 15, p. 8). The PRTF is an evaluation on a four-point scale of how the plaintiff's mental impairment impacts four functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. <u>Moore</u> v. <u>Barnhart</u>, 405 F.3d 1208, 1213 (11th Cir. 2005).

The law judge is required to complete a PRTF when the claimant presents a colorable claim of mental impairment. <u>Id</u>. at 1214. Isolated and sporadic references to mental impairments do not state a colorable claim. <u>See</u> <u>Wilson</u> v. <u>Barnhart</u>, 210 Fed. Appx. 448, 450-51 (5th Cir. 2006) (no error in failing to consider a possible mental impairment when the record contained only isolated and sporadic references to such an impairment); <u>Sesberry</u> v. <u>Astrue</u>, 2010 WL 653890 at **3-5 (M.D. Fla. 2010) (isolated references in the record to the plaintiff's mental health are not enough to require the law judge to address or develop the alleged mental disability).

For the reasons discussed, the plaintiff did not raise a colorable claim that he has the impairment of mental retardation, which was his only, and belated, claim of a mental impairment. As indicated, the record contains no diagnostic findings, school records, or other objective evidence indicating that the plaintiff suffers from mental retardation. See 20 C.F.R. 404.1508, 416.908 (in order to establish a mental impairment, a person must show, among other things, that the impairment "can be shown by medically acceptable clinical and laboratory diagnostic techniques"); SSR 96-4p 1996 WL 374187 (S.S.A.) (medical signs and laboratory findings show that there is a medically determinable mental impairment). Rather, the plaintiff relies upon an errant comment by a rehabilitation physician that he suspects mental retardation which, as discussed, the law judge reasonably discounted.

Furthermore, the plaintiff did not even testify that a mental impairment precludes him from working. In addition, a mental health screening by a treating provider was negative for depression and anxiety. Accordingly, the plaintiff did not present a colorable claim of mental impairment and, concomitantly, the law judge did not err in failing to complete a PRTF. See Wilson v. Barnhart, supra; Sesberry v. Astrue, supra;

-25-

see also Moten v. Astrue, 2012 WL 983768 at **19-21 (M.D. Fla.) (scant reference to depression in the record does not establish a colorable claim of a mental impairment); Meadows v. Astrue, 2010 WL 3614157 at *6 (N.D. Ga.) (two notations of a mental impairment in years of treatment notes is insufficient to state a colorable claim of a mental impairment).

Finally, the plaintiff's vague contention that the law judge did not consider his physical and mental impairments in combination is also meritless. As discussed, the plaintiff failed to demonstrate the presence of a mental impairment that the law judge should have considered but did not. Furthermore, the plaintiff does not even identify a limitation that the law judge failed to include in the residual functional capacity as a result of the purported failure to consider the plaintiff's impairments in combination.

The law judge, nevertheless, obviously accepted that the plaintiff's intellectual capacity was limited to some extent since he included in his residual functional capacity determination a restriction to "simple instructions and tasks" (Tr. 13), and confirmed with the vocational expert that the light exertional jobs the expert identified were unskilled jobs consistent with those limitations (Tr. 48-50). Thus, although the plaintiff has not proven

-26-

a mental impairment, the law judge included a mental functional limitation in his residual functional capacity finding.  Under these circumstances, the law judge's residual functional capacity is clearly not deficient because it does not contain greater mental functional limitations.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**.  The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this /6ᵗʰ day of June, 2014.

_____
THOMAS  G.  WILSON
UNITED  STATES  MAGISTRATE  JUDGE